**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bruce Kurchack, | No. CV-09-1766-PHX-GMS |
| Plaintiff, | **ORDER** |
| vs. | |
| Life Insurance Company of North America; RBC Wealth Management Disability Plan, | |
| Defendants. | |

Pending before the Court are a Motion for Summary Judgment (Doc. 32) filed by Plaintiff Bruce Kurchack and a Motion for Summary Judgment (Doc. 37) filed by Defendants Life Insurance Company of North America ("LINA") and RBC Wealth Management Disability Plan ("RBC Plan"). For the following reasons, the Court denies Plaintiff's motion and grants in part and denies in part Defendants' motion.

**BACKGROUND**

RBC Wealth Management hired Plaintiff Kurchack as a Senior Vice President on July 14, 2006. (Doc. 33; 38). As an employee, Kurchack was eligible to receive protection under the RBC Plan, which is a qualified plan under the Employee Retirement Income Security Act ("ERISA"). (Doc. 14). On August 20, 2008, Kurchack stopped working due to a disability, which he described as severe depression and anxiety.

Kurchack submitted a request for short term disability ("STD") benefits and provided supporting medical documentation, including a form which indicated that his treating physician believed that Kurchack was disabled from his own occupation. (Doc. 33; 38). LINA concluded that the medical information supported the recommendation that Kurchack not work through September 14, 2008 and sent Kurchack a letter on September 3, 2008, informing him that he was approved for STD benefits for the period beginning August 28, 2008 through September 14, 2008.

On October 1, 2008, LINA sent Plaintiff a letter denying STD benefits beyond September 14, 2008, following a determination by DJ McDowell, PhD, that Plaintiff had not presented evidence of a global functional impairment. (Doc. 32; 38). Kurchack appealed the decision to deny benefits in late November 2008; the appeal was denied on March 12, 2009. (Doc. 31, Ex. 1; 38). Following the appeal, Plaintiff filed his Complaint, alleging that LINA did not provide a plausible basis for denying Kurchack's claim and seeking unpaid disability benefits under the RBC Plan from September 14, 2008 forward. (Doc. 1).

**DISCUSSION**

**I. Legal Standard**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). Substantive law determines which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson,* 477 U.S. at 248). Thus, the nonmoving party must show that the genuine factual issues "'can be resolved only by a finder of fact *because they may reasonably be resolved in favor of either party*.'" *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson*, 477 U.S. at 250).

The standard is no different for a case which must be tried on an administrative record. *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1093–94 (9th Cir. 1999).

**II. Plaintiff's Motion for Summary Judgment**

Under 29 U.S.C. § 1132(a)(1)(B), a participant or beneficiary may bring an action "to recover benefits due to him under the terms of his plan [or] enforce his rights under the terms of the plan". Here, the parties agree that the Court should review the denial of benefits de novo. (Doc. 36); *see Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) ("[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."). Under de novo review, no deference is given to LINA's decision to deny benefits. *Kearney*, 175 F.3d 1090 n.2. Kurchack carries the burden of establishing that he was entitled to benefits under the terms of the STD Plan. *Muniz v. Amec Constr. Mgmt., Inc.*, 623 F.3d 1290, 1294 (9th Cir. 2010). This remains true even after an initial award of benefits. *Id.* at 1296.

**A. Administrative Record**

Plaintiff asserts that he met the definition of disabled, and therefore, the Court should grant him STD benefits; however, Plaintiff, who holds the burden of establishing that he was disabled, has not pointed to sufficient evidence from the administrative record that is uncontested to warrant summary judgment on this issue. When a court reviews a denial of benefits de novo, the "court simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits". *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006). Generally, the court should limit its inquiry to the evidence in the administrative record. *See Opeta v. Nw. Airlines Pension Plan for Contract Emps.*, 484 F.3d 1211, 1217 (9th Cir. 2007). Under certain limited circumstances, when it is "*clearly establish[ed]* that additional evidence is *necessary* to conduct an adequate de novo review of the benefit decision", the Court may in its discretion consider evidence outside the administrative record. *Id.* (internal quotation marks omitted); *see Muniz*, 623 F.3d at 1297 (district courts have discretion to admit additional evidence when the evidence is necessary

to conduct an adequate de novo review of the denial). However, "'[in] most cases' only the evidence that was before the plan administrator at the time of determination should be considered." *Opeta*, 484 F.3d at 1217 (quoting *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938 (9th Cir. 1995)).

Plaintiff seeks to supplement the administrative record and has attached to his Reply (Doc. 40) a series of documents not contained in the administrative record and an affidavit by Plaintiff's counsel, stating that counsel has "personal knowledge of the facts and circumstances set forth in this declaration", (*Id.*, Ex. 1). Plaintiff asserts that the medical records, attached as Exhibit 2, were not made part of the administrative record because Defendants never raised the issue of Kurchack's failure to establish that he was under the ongoing care of a medical doctor. (Doc. 40). It is unclear why Plaintiff would not present to LINA all the documentation he had about his disability and treatment during the administrative review process, but in any event, Plaintiff has not presented an argument that falls within the "exceptional circumstances" set forth in *Opeta*, based on which the Ninth Circuit has determined evidence outside the administrative record warrants consideration. *Cf. Opeta*, 484 F.3d at 1217–18 (discussing with approval a district court decision to admit additional evidence where "the plan administrator had prevented the plaintiff from providing medical records to support his claim during its review and the administrative record included only incomplete, illegible, and disorganized medical records").

In addition, Kurchack offers various documents of unknown sources related to claims policies and procedures. (Doc. 40, Ex. 3). The documents range from manuals on how to address specific issues that may be raised in a clam to emails between parties unknown to the Court and court documents from a case in the Southern District of New York. Plaintiff has not argued why any of these documents should be deemed clearly necessary to conduct an adequate de novo review of LINA's decision and admitted by the court. *See Opeta*, 484 F.3d at 1217. Furthermore, the Court, in its discretion, concludes that, unless it determines that it will consider Defendants' newly asserted basis for determining Plaintiff was ineligible for benefits, the expansion of the administrative record to include these various documents is

1 unnecessary to conduct an adequate de novo review, and thus the Court will not consider any of the exhibits attached to Document 40 for purposes of the pending motions for summary judgment.

### B. Plaintiff's Challenges to the Denial of STD Benefits

Kurchack first asserts that he met the plan's definition of disabled, and the fact that LINA had previously determined that he was disabled, and the reviewer stated that there was no change in his condition, supports this conclusion. (Doc. 32). Defendants assert a new argument not included in their initial denial that to be disabled, "Kurchack must have been 'under the *direct, ongoing* care of a medical doctor who determines that [he] is unable to perform the duties of the job for more than five workdays because of a qualifying disability.'" (Doc. 36). However, according to Defendants, the administrative record establishes that Plaintiff was not under the "*direct* and *ongoing* care of a medical doctor", and therefore he does not meet the plan's definition of disabled. (*Id.*). Kurchack contends that Defendants' purported reason for denying his claim is a post-hoc rationale that the Court cannot consider. (Doc. 40).

When denying a claimant's request for benefits, ERISA requires a "'full and fair' assessment of [the] claims and clear communication to the claimant of the 'specific reasons' for benefit denials." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003) (citing 29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1 (2002)). Here, the letter informing Kurchack of the denial of benefits stated the information on file "does not, to a reasonable medical certainty, support a global functional impairment, serious psychiatric symptoms, or work incapacity." (Doc. 31, Ex. 2 DEF 271). Defendants now argue that Plaintiff's claim was denied because he did not establish that he was under the direct and ongoing medical care of any one doctor. Defendants contend that this argument is consistent with the reason provided in the October 1 letter. The Court disagrees.

Although the Ninth Circuit has rejected explanations for a denial of benefits first presented during litigation, *see Jebian v. Hewlett-Packard Co. Emp. Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1104 (9th Cir. 2003) ("a contrary rule would allow claimants,

who are entitled to sue once a claim had been 'deemed denied,' to be 'sandbagged' by a rationale the plan administrator adduces only after the suit has commenced"), as Defendants noted, the assertion of a post-hoc rationale may not be prohibited if the review is de novo as is the case here, *see id.* at 1105–06. But, even if the Court considers Defendants' argument, the argument is unavailing. In reviewing a plan, the Court must "'interpret terms in ERISA insurance policies in an ordinary and popular sense as would a person of average intelligence and experience.'" *Padfield v. AIG Life Ins. Co.*, 290 F.3d 1121, 1125 (9th Cir. 2002) (quoting *Babikian v. Paul Revere Life Ins. Co.*, 63 F.3d 837, 840 (9th Cir. 1995)). At issue here is the interpretation of "direct and ongoing care of a medical doctor." Defendants contend that because Kurchack only saw each of the three doctors listed once during the period at issue for STD benefits, he has not satisfied the definition of disabled. (Doc. 36).

The record suggests that Plaintiff saw Dr. Jay Friedman, who appears to be his primary care physician, on August 21 and 27, 2008;[1] Dr. Sheldon Wagman, DO, who specializes in psychiatry, on September 8, 2008; and Counselor Ken Wells on October 30, 2008. Plaintiff was denied continuing coverage on October 1, 2008. At that time, he had not yet provided documentation from Dr. Wagman or Counselor Wells. (Doc. 31, Ex. 2 DEF 243–44). Considering Defendants' argument, it appears from the record that Plaintiff did visit Dr. Friedman on multiple occasions.[2] Setting that fact aside, it is not obvious from the definition of disabled that a claimant must be under the "direct and ongoing care" of one single doctor. It is common for a doctor to refer a patient to another doctor. Here, the form completed by Dr. Friedman after the August 27, 2008 visit indicates that he referred Plaintiff

---

[1] The form filled out by Dr. Jay Friedman on August 29, 2008, states that the next visit was scheduled in 2 weeks. (Doc. 31, Ex. 2 DEF 283). The October 1, 2008 letter informing Kurchack of the initial denial of benefits states that Kurchack told LINA that he saw Dr. Friedman on September 21, 2008. (Doc. 31, Ex. 2 DEF 270). It is unclear if Kurchack was referring to the same visit listed in the form filled out by Dr. Friedman.

[2] Although Plaintiff appears to have visited Dr. Friedman on multiple occasions, for some reason Plaintiff has conceded that he was not under the direct and ongoing care of Dr. Friedman. (Doc. 41).

to Dr. Marcus Earle, who works with Ken Wells. (Doc. 31, Ex. 3 DEF 369). Moreover, although the doctors he visited did not schedule follow up appointments, a reasonable fact finder nevertheless could conclude that he was disabled as defined by the Plan, determining that follow up appointments were unnecessary given that the doctors had prescribed him a number of medications for his disability.

Kurchack makes a number of additional arguments regarding LINA's decision to deny benefits. He argues that LINA must have improperly denied his claim because LINA initially determined that he was disabled and later concluded that, although there was no change in his condition, he no longer met the definition of disabled. (Doc. 32). "[T]he fact that the claimant was initially found disabled under the terms of the plan may be considered evidence of the claimant's disability, but . . . [this does not suggest] that paying benefits operates forever as an estoppel so that an insurer can never change its mind." *Muniz*, 623 F.3d at 1296–97 (internal citation and quotation marks omitted). Plaintiff relies on *Montour v. Hartford Life & Accident Ins. Co.*, 588 F.3d 623 (9th Cir. 2009), which is factually distinguishable. In *Montour*, the insurance company had paid the claimant disability benefits for over two years, and then found him no longer disabled. *Id.* at 635. Under those circumstances, the Ninth Circuit noted that it would be reasonable to expect that the insurance company based this decision on evidence of improvement in the claimant's condition, rather than a lack of degeneration. Here, LINA approved benefits for approximately two weeks and then denied further benefits. A reasonable fact finder could conclude that the initial granting of benefits should not be weighted as heavily as it was in *Montour* given the obvious distinctions in the facts of the two cases.

In his motion, Plaintiff also seems to suggest that Defendants erred in accepting the opinion of a non-examining psychologist and RN over the opinion of his medical doctor on the issue of his disability. (Doc. 32). Plaintiff asserts that in doing so, LINA arbitrarily refused to credit reliable evidence, including the opinions of his treating physicians in violation of *Black & Decker*, 538 U.S. at 834. He further characterizes LINA's staffs' conclusions as "biased and unreasonable." To the extent that Plaintiff is suggesting that

because LINA chose not to have its own doctor personally evaluate Plaintiff, LINA was required to "accord special weight to the opinions of [Plaintiff's] treating physician", Plaintiff is incorrect. *See id.* Moreover, Plaintiff has not pointed to sufficient evidence for the Court to conclude at this stage that any denial of benefits was unreasonable and based on some bias on the part of LINA's staff. It is clear from the initial denial letter that LINA's staff did not have a significant amount of documentation on Plaintiff's disability at that time. (Doc. 31, Ex. 2). In fact, LINA did not receive documentation from Dr. Wagman on the September 8, 2008 visit until October 2, 2008, a day after the initial denial of benefits. Nevertheless, after receiving this additional information, Dr. McDowell again reviewed Plaintiff's claim, a point that Plaintiff concedes. (Doc. 41). Nothing in the record demonstrates beyond dispute that LINA "arbitrarily refused to credit reliable evidence." Thus, the fact that LINA's staff ultimately determined that the documentation it received from Dr. Friedman, and later from Dr. Wagman, did not establish a disability does not in itself prove that LINA came to an unreasonable conclusion.

Plaintiff also contends that a paper review of his claim, which LINA apparently conducted, was not permitted by the plan. (Doc. 32). Plaintiff quotes language stating that "RBC may require [Kurchack] to obtain the opinion of a different medical doctor at the cost of the company." (Doc. 32). Nothing about this statement suggests that a paper review of a STD benefits claim is prohibited by the terms of the plan. Rather, the language quoted simply states that should RBC choose to seek the opinion of an additional medical doctor, it may do so, but at its own expense.

Plaintiff raises the argument that based on the definition of disability, a medical doctor was required to make the determination of whether Plaintiff met the definition of disabled. (Doc. 32). In this case, the review was not conducted by a medical doctor, but rather by LINA's consulting psychologist, Dr. McDowell, and in-house nursing staff who never examined Plaintiff. (Doc. 38). Plaintiff points to the part of the definition, which states that "a medical doctor [must] determine[] that [he] is unable to perform the duties of the job for more than five workdays because of a qualifying disability.'" (Doc. 36). The STD plan

- 8 -

definition of disability, however, does not require that the Plan have a medical doctor determine that the claimant is able to perform the duties of the job to deny benefits. The plain meaning of the plan is that to be considered for STD benefits, a claimant must establish that a medical doctor has determined that he is unable to perform his job for a certain period of time. The definition says nothing about the claim review process.

Plaintiff also contends that on appeal deference was given to Dr. McDowell's opinion from the initial claims denial in violation of certain ERISA regulations. Specifically, Plaintiff cites 29 C.F.R. § 2560.503-1(h)(4), which refers to the requirements with which claims procedures must comply to "be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination." The regulations call for providing claimants an opportunity to supplement their claims, and require the entity reviewing the appeal to take into account all information in the record, consult a health care professional who was not involved in the initial adverse determination, and not give deference to that initial determination. 29 C.F.R. § 2560.503-1(h). Plaintiff points to a document from December 2008 completed by LINA employees, stating that "new medical information [was] received–no new findings that would change previous recommendation by Dr. McDowell staffing." (Doc. 31, Ex. 2 DEF 000274). It appears that the document was completed several months before LINA made a final determination about Plaintiff's appeal, and according to Defendants, before the claim was referred to LINA's appeals team. (Doc. 37). The March 12, 2009 letter notifying Plaintiff's counsel that LINA was upholding the prior decision to deny benefits states that LINA reviewed Plaintiff's record in its entirety "without deference to prior reviews" and that to "ensure that the medical evidence was interpreted appropriately, the file was reviewed with a Medical Consultant." (Doc. 31, Ex. 4 DEF 386). Thus, there is an issue of fact as to whether LINA's review of Plaintiff's appeal complied with the ERISA regulations.

There is some evidence that LINA may have applied the wrong diagnostic code, using 311 (Doc. 38), instead of the codes listed by the treating physicians, 296.32, 300.02 and

307.50, (Doc. 31, Ex. 3).[3] However, Plaintiff has not provided any admissible evidence interpreting the codes. That discrepancy, combined with Defendants' interpretation of "direct, ongoing care of a medical doctor", alone is not sufficient evidence at this stage for the Court to conclude that Plaintiff was entitled to STD benefits. Plaintiff challenges the denial on a number of other bases, unsupported by any Ninth Circuit case law, including that the claim was reviewed without conducting an in-person medical evaluation. As Plaintiff notes, such arguments go to issues of fact related to the thoroughness and accuracy of the review, and therefore, cannot be resolved on a motion for summary judgment. (Doc. 32 at 14). Plaintiff has not met his burden of establishing that he was entitled to STD benefits, and therefore, his Motion for Summary Judgment is denied.

**III. Defendants' Cross-Motion for Summary Judgment**

In their Cross-Motion for Summary Judgment, Defendants seek a determination that Kurchack's maximum possible award of damages is limited to twelve weeks of STD benefits. (Doc. 37). In his Complaint, Kurchack requested an award of "all benefits due Plaintiff in the past and future under the plan, plus interest." (Doc. 1). However, in his Motion for Summary Judgment, Plaintiff only requested the remaining ten weeks of STD benefits that he alleges are owed him. (Doc. 32). Defendants now assert that because Kurchack never returned to work, he was ineligible to receive the second possible set of twelve weeks of STD benefits. (Doc. 37). Additionally, Defendants argue Plaintiff never applied for long term disability ("LTD") benefits. Accordingly, at most Kurchack could be awarded damages stemming from a determination that he was disabled during the first twelve weeks from the time he sought STD benefits.

Plaintiff does not address Defendants' argument that he was ineligible to receive the

---

[3] Plaintiff contends that LINA's failure to discuss Kurchack's GAF score is also indicative of LINA's failure to reasonably review his claim. Dr. McDowell's October 8, 2008 claim strategy form does acknowledge Dr. Wagman's estimate of a GAF of 50, and notes that the highest GAF in the last year was also at 50. (Doc. 31, Ex. 1 DEF 000185). Accordingly, the Court assumes that this factor was taken into consideration at least in LINA's denial of Plaintiff's appeal.

second set of STD benefits and does not appear to argue that he should have received such benefits. Accordingly, the Court assumes that Plaintiff has conceded that he is ineligible for such benefits.[4] Defendants also assert that Plaintiff may not be awarded LTD benefits because he failed to exhaust administrative remedies by not applying for such benefits. In his Motion for Summary Judgment, Plaintiff does not request LTD benefits, and in his Response to the Cross-Motion he seems to suggest that he has not asserted a claim for LTD benefits here, yet he argues that Defendants' motion should be denied as to these benefits. (Doc. 32; 40). It is unclear whether Plaintiff's Complaint asserts that he is entitled to benefits under the LTD plan and that he was denied such benefits.[5]

Generally, a claimant challenging a denial of benefits under an ERISA plan "'must avail himself or herself of a plan's own internal review procedures before bringing suit in federal court.'" *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 626 (9th Cir. 2008) (quoting *Diaz v. United Agric. Emp. Welfare Benefit Plan & Trust*, 50 F.3d 1478, 1483 (9th Cir. 1995)). Plaintiff concedes that he did not submit a notice of claim or otherwise apply for LTD benefits; however, he argues that he was not required to apply for such benefits because doing so would have been futile. (Doc. 40). The Ninth Circuit has recognized some exceptions to the exhaustion requirement, including "where a plan fails to establish or follow 'reasonable' claims procedures as required by ERISA" or when "resort to the administrative route is futile." *Id.* at 626–27.

Plaintiff first asserts that the LTD plan and RBC Long-Term Disability Summary Plan

---

[4] According to STD Policy, if an employee becomes disabled again after having received STD benefits, that employee may be eligible for an additional period of STD benefits but only after the employee has returned for at least "four full consecutive weeks between the periods of disability." (Doc. 31). Plaintiff neither challenges the accuracy of Defendants' recitation of the policy nor does he allege that he in fact returned to work and satisfied the eligibility requirements of the Plan.

[5] Plaintiff's Complaint states that on October 1, 2008, "Defendant LINA denied Plaintiff's long term disability benefits." (Doc. 1). That was the date of the initial letter denying Plaintiff a continuation of STD benefits. (Doc. 33; 38). Thus, Plaintiff appears to have mistakenly stated that his LTD benefits were denied.

Description ("SPD") fail to contain any language describing internal review procedures in violation of 29 C.F.R. § 2560.503-1. (Doc. 40). Plaintiff also appears to argue that he did not have notice that he was required to initiate a claim for LTD benefits. As to that argument, the STD policy explains that an employee may be eligible for LTD benefits if the disability continues for more than 90 days. (Doc. 31). In such a case, "[e]mployees should contact the HR Service Center for more information on *how to apply for LTD benefits* as soon as it becomes evident that the disability may continue longer than 90 days." (*Id.* (emphasis added)). Regarding Plaintiff's argument that neither the SPD nor the policy contain "any language describing any sort of internal review procedure", a quick review of the SPD alerts the reader that if a claim is denied in whole or in part, the claimant has "the right to have the Plan review and reconsider your claim." (Doc. 31, DEF 75). The SPD then explains under what circumstances a claimant may have an ERISA claim. Furthermore, the SPD specifically incorporates by reference the Certificate of Insurance, which is attached to the SPD, and notifies the employee that more detailed information regarding Claim and Appeal Provisions is included therein. The Certificate of Insurance explains that once an employee is eligible to receive benefits, the employee "must request a claim form or obtain instructions for submitting [the] claim telephonically or electronically". (Doc. 31, Ex. 1). It also explains the notice procedure for informing employees that a claim has been denied and the procedure for appealing a denial of benefits. (Doc. 31, Ex. 1 DEF 105). Thus, Plaintiff's argument is not supported by the record.

Plaintiff asserts that applying for LTD benefits following the denial of STD benefits would have been futile because the definition of "disability" for purposes of a determination of LTD benefits is more restrictive than that used to determine eligibility for STD benefits. (Doc. 40). Plaintiff cites *Turnipseed v. Educ. Mgmt. LLC's Emp. Disability Plan*, which does not actually reach the issue because the complaint at issue was too vague to consider the argument. 2010 WL 140384, *2 n.2 (N.D. Cal. Jan. 13, 2010). However, that court cited *Darensbourg-Tillman v. Robins, Kaplan, Miller & Ciresi LLP Short Term Disability Plan*, 2004 WL 5603225 (C.D. Cal. Sept. 3, 2004), in which the district court denied a motion to

dismiss an LTD benefits claim where the plaintiff's claim for STD benefits was denied and plaintiff alleged that "as a direct proximate result of the 'wrongful conduct of the STD Plan and Unum [in denying her STD claim], Plaintiff [was] wrongfully precluded from obtaining" LTD benefits. 2004 WL 5603225, at *3. The district court compared the STD plan language, which required "only that the insured be '*limited* from performing the material and substantial duties [of your regular occupation],' while the LTD Plan require[d] that the insured '*cannot* perform each of the material duties.'" *Id.* The court noted that, because the defendant had not yet shown "how plaintiff could have been denied STD benefits and still receive LTD benefits", plaintiff was excused from meeting the exhaustion requirement. *Id.*

Here, the STD plan defines disabled as being "under the direct, ongoing care of a medical doctor who determines that [the claimant] is unable to perform the duties of the job for more than five workdays because of a qualifying disability." (Doc. 31). A "qualifying disability is one in which an employee is unable to perform the material duties of the job solely due to a covered injury or illness." (Doc. 38; 41). The LTD plan states that the claimant must be (a) "unable to perform the material duties of [his] regular occupation, or solely due to Injury or Sickness, [he is] unable to earn more than 80% of [his] Indexed Covered Earnings", and (b) "[a]fter Disability Benefits have been payable for 24 months, [he is] unable to perform the material duties of any occupation for which [he] may reasonably become qualified based on education, training or experience, or solely due to Injury or Sickness, [he is] unable to earn more than 80% of [his] Indexed Covered Earnings." (Doc. 31, Ex. 1 DEF 101).

To receive either STD or LTD benefits, the claimant must be unable to perform the material duties of his job. Thus, the terms of these plans are distinguishable from the terms of the plans at issue in *Darensbourg-Tillman*, in which the STD plan only required some limitation to the claimant's ability to perform the duties of his job, while the LTD plan required total inability to perform the material duties of the occupation. Nevertheless, a reasonable fact finder could conclude that because the standard for establishing eligibility for STD benefits mirrors the standard for establishing eligibility for LTD benefits, it would have

been futile for Plaintiff to apply for LTD benefits. Accordingly, Defendants' motion is denied as to this point.

Plaintiff also generally argues that a claimant is excused from the exhaustion requirement when the evidence demonstrates that a plan administrator is biased and certainly would have denied a claim or when "an insurer had abused its discretion in failing to find a person disabled under an 'own occupation' standard". (Doc. 40). However, Plaintiff does not actually argue that there is evidence in the administrative record supporting his contention that LINA was biased and would not have fairly considered his claim, and therefore, Plaintiff has not established that applying for LTD benefits would have been futile on this basis.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 32) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (Doc. 37) is **GRANTED IN PART AND DENIED IN PART.**

The Case Management Order (Doc. 28), dated September 10, 2010, set a briefing schedule, which provided the following deadlines: (1) Plaintiff's Opening Brief would be due April 22, 2011; (2) Defendants' Responsive Brief would be due May 20, 2011; and (3) Plaintiff's Reply Brief would be due June 10, 2011. Because the parties have not filed their respective briefs by the deadlines set in that Order, the parties have waived the right to file those documents.

The Final Pretrial Conference is scheduled for Friday, **September 23, 2011, at 2:00 p.m.** in Courtroom 602, Sandra Day O'Connor U.S. Federal Courthouse, 401 W. Washington St., Phoenix, Arizona 85003-2151.

DATED this 15th day of August, 2011.

*G. Murray Snow*
G. Murray Snow
United States District Judge